# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ERIC WAGGONER, | : | Case No. 3:11-cv-143 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF<br>SOCIAL SECURITY, | :<br><br>: | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THE CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Eric Waggoner ("Plaintiff") "not disabled," and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"). *See* doc 9-2 at PageID 73.

The case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 10), the Commissioner's Memorandum in Opposition (doc. 11), Plaintiff's Reply (doc. 12), the administrative record (doc. 9), and the record as a whole.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed his SSI and DIB applications on April 17, 2006, asserting he has been under a "disability" since October 31, 2002. PageID 72. However, at the first hearing, Plaintiff,

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

though counsel, elected to amend the date of his alleged disability onset to March 20, 2006. *Id*. Plaintiff claims he is disabled and unable to work due to bipolar disorder and depression. PageID 74.

Following initial administrative denials of Plaintiff's application, Plaintiff received a hearing before ALJ Thomas McNichols, II. PageID 72-82. Two hearings were held, at which the ALJ heard testimony from Plaintiff; Mary Buban, Psy.D., who testified as the Medical Expert; and Charlotta Ewers, who testified as the Vocational Expert. *Id*. On August 9, 2010, the ALJ issued a written decision, concluding that Plaintiff was not under a disability at any time from March 20, 2006, the alleged onset date, through the date of his decision, and therefore was ineligible to receive both SSI and DIB. *Id.*

In particular, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since March 20, 2006, the amended alleged disability onset date (20 CFR 404.1571 et seq., and 416.971 et. seq.).

3. The claimant has the following severe impairments: exogenous obesity, bipolar disorder, and schizoaffective disorder (20 CFR 404. 1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he is limited to jobs which would not required him to climb ladders, ropes, or scaffolds. He is further

> limited to simple one- or two-step tasks that would require little, if any concentration. He should not be expected to perform work that would involve complex or detailed instructions. He is restricted to low stress work, which in this case is defined as no production quotas. He is further restricted to jobs which would require no more than limited contact with supervisors and co-workers as well as no teamwork. He is also limited to jobs which would not require contact with the general public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 5, 1979, and was 22 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 20, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 75-82 (brackets added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 59. Plaintiff then timely filed this appeal, arguing that the ALJ erred in rejecting the opinions of his treating psychiatrist and in relying, instead, on the opinion of the Medical Expert. *See* doc. 10 at PageID 604-24.

### B. Plaintiff's Vocational Profile and Testimony

Plaintiff was 26 years old on his alleged disability onset date, and thus considered a "younger individual." *See* 20 CFR §§ 404.1563, 416. 963. Plaintiff has a high school education,

took electronic engineering classes at Sinclair Community College, and completed barber school. PageID 126, 144. He has no past relevant work. PageID 125.

At the two hearings before the ALJ, Plaintiff testified that since March 20, 2006 he has experienced bipolar symptoms, which causes him to be depressed, and also affects his ability to concentrate and sleep. PageID 94-95, 126-27. He further testified that he hears voices in his head. PageID 126. However, Plaintiff testified that he has no physical problems. *Id*.

Plaintiff first received attention for his bipolar disorder at a community mental health center in 2006, and has been seeing a psychiatrist ever since. PageID 127-28. Plaintiff is prescribed medication for his bipolar disorder and anxiety, and he testified that the medication makes him "feel better." PageID 128.

Plaintiff further testified that he has been hospitalized on account of his mental impairments "three or four times," with the most recent hospitalization in December 2008, which lasted two weeks. PageID 128-29, 139. He also stated that he has gone without taking his medication over periods of time. PageID 140-41. He testified that he used to drink heavily, but stopped in 2006. PageID 134. Plaintiff's past drug use includes cocaine and marijuana, but he has had no drug-related convictions and denies any recent use. PageID 135. Plaintiff's earlier drug habit forced him into drug rehab at Nova Care in Dayton, Ohio. PageID 141.

Plaintiff lives alone in an apartment, and is able to cook, wash dishes, sweep, mop, vacuum, and shop for groceries. PageID 131-32. However, his mother still does his laundry. *Id*. at PageID 131. He is able to feed, dress and groom himself. *Id*. at PageID 136. Generally, he does not see friends, go on any trips, or interact with people. PageID 132-33. Plaintiff testified that, on a typical day, he wakes up at 7:00 A.M. to take his medication. PageID 136. Then, he lies down for another three or four hours until lunch time. *Id*. He reports not being able to

perform activities other than watching TV or playing on his keyboard. PageID 102-04, 137-38.

## II. APPLICABLE LAW

### A. Standard of Review

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both

"medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### B. Deference Accorded to Treating Physicians

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F. 3d 532, 540 (6th Cir. 2007). Under the

"treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source, so long as he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Nevertheless, a treating physician's statement -- that a claimant is disabled -- is not determinative of the ultimate issue. *Landsaw v. Sec'y of H.H.S.*, 803 F.2d 211, 213 (6th Cir. 1986). Moreover, a treating physician's opinion is only to be given controlling weight if it is well-supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Id*. The Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is "inconsistent with other substantial evidence of record." 20 C.F.R. § 404.1527(d)(2).

If the opinion of a treating source is not accorded controlling weight, the ALJ must apply certain factors -- including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source -- in determining the level of weight to give the opinion. *Wilson*, 378 F. 3d at 544.

7

### III. ANALYSIS

As a preliminary note, the pertinent medical findings and opinions have been adequately summarized in the parties' briefs, and the Court will not fully repeat them here. *See* doc. 10 at PageID 605-616; doc. 11 at PageID 626-629.

Plaintiff assigns one error in this case -- namely, that the ALJ erred in rejecting the opinions of Plaintiff's treating physicians, and erroneously favored the opinion of the Medical Expert. For the reasons that follow, the Court finds that the decision of the ALJ is supported by substantial evidence, and should be affirmed.

**A. Treating Sources' Opinions**

**1. Jaseem Pasha, M.D.**

Dr. Pasha first saw Plaintiff on May 11, 2006. PageID 390-92. Dr. Pasha stated that Plaintiff's thinking process was fairly logical, and he had borderline intelligence. *Id*. Dr. Pasha noted Plaintiff's hospitalization from March 2006, his homicidal ideation, and auditory hallucinations. *Id*. Dr. Pasha assigned Plaintiff a GAF of 55,[2] and diagnosed him with suffering from multiple mental impairments including, *inter alia*, schizophrenia and alcohol abuse. *Id*. Plaintiff was to be treated with counseling and medication. *Id*. Dr. Pasha continued to treat Plaintiff through mid-2008, with visits occurring once every 2-4 months. *See* PageID 436-58.

---

[2] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to access a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.*, 61 F.App'x. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 51-60 indicates "moderate symptoms OR any moderate difficulty in social, occupational, or school functioning." *Id*.; *accord Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997) ("moderate difficulty" does not rise to the level of disability).

Dr. Pasha notes reflect a number of discussions with Plaintiff regarding the importance of consistently and regularly taking his medication. *Id*.

On April 10, 2008, Dr. Pasha completed a Mental Functional Capacity Assessment form for the county welfare department. PageID 420-21. Dr. Pasha reported that, in his opinion, Plaintiff would be unemployable for twelve months or longer due to the severity of his mental impairments. *Id*. Particularly, Dr. Pasha noted that Plaintiff was anxious, suspicious, paranoid, had an incoherent thinking process and a flat affect, feared medications, cannot focus, and cannot concentrate consistently. *Id*.

In addition, Dr. Pasha concluded that, due to his mental impairments, Plaintiff is markedly limited in his ability to do the following: remember locations and work-like procedures; carry out very short and simple instructions; carry out detailed instructions; maintain attention and concentration for an extended period; perform within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with, or proximity, to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at constant pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. *Id*.

Furthermore, in the same assessment, Dr. Pasha reported Plaintiff as moderately limited in his ability to do the following: understand and remember very short and simple instructions; understand and remember detailed instructions; make simple work related decisions; interact

appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism; and be aware of normal hazards and take appropriate precautions. *Id*.

### 2. Joseph Trevino, M.D.

Plaintiff began seeing Dr. Trevino on August 14, 2008. PageID 433. Dr. Trevino conducted a mental exam on Plaintiff, which revealed no abnormalities. *Id*. Dr. Trevino initially observed Plaintiff to have tangential thought-content, and a mildly-depressed mood. *Id*. Dr. Trevino reported that "[o]verall the patient appears to be functioning quite well and does feel that his medication has been very 'helpful to him.'" *Id*.

On September 25, 2008, Dr. Trevino noted that Plaintiff was reportedly experiencing auditory hallucinations on a daily basis "which are commanding and accusatory in nature." PageID 431. Accordingly, Dr. Trevino adjusted Plaintiff's medication. On January 16, 2009, Dr. Trevino noted Plaintiff's December 2008 hospitalization was "due to not taking his medication as directed." PageID 427. Similar to the notes of Dr. Pasha, Dr. Trevino's notes reflect a number of discussions with Plaintiff regarding the importance of consistently taking his medication. *Id*.

On March 27, 2009, Dr. Trevino submitted a "Psychiatric Review Technique Form" at the request of the State Agency. PageID 465-75. Dr. Trevino reported that Plaintiff experiences psychotic features and deterioration that are persistent and evidenced by delusions or hallucinations, incoherence and illogical thinking associated with a flat affect, and from Plaintiff being emotionally withdrawn and/or isolated. PageID 467. Dr. Trevino opined that Plaintiff had depressive syndrome and manic syndrome, but did not report him to have bipolar disorder. PageID 468. Dr. Trevino opined that Plaintiff has moderate limitations regarding activities of

daily living, as well as his deficiencies of concentration, persistence, or pace. PageID 472. Dr. Trevino reported Plaintiff is markedly limited in his difficulties in maintaining social functioning. *Id*.

Dr. Trevino also opined that Plaintiff has "poor to no ability" to: follow work rules; relate to co-workers; use judgment; deal with work stresses; function independently; demonstrate reliability; and understand, remember, and carry out complex job instructions. PageID 473-75. In addition, Dr. Trevino reported Plaintiff's "fair" ability to: deal with the public; interact with supervisors; maintain attention and concentration; understand, remember and carryout detailed, but not complex job instructions; understand, remember and carry out simple job instructions; maintain his personal appearance; behave in an emotionally stable manner; relate in social situations; and manage individual benefits in his own best interest. *Id*.

In September 2009, Dr. Trevino saw Plaintiff and reported that Plaintiff had an improved condition and was adjusting "quite well" to his medication. PageID 575. Plaintiff reported taking his medication daily as prescribed and enjoyed living in an apartment by himself. *Id*. Dr. Trevino noted that Plaintiff was no longer reporting auditory hallucinations, and found his thought processes to be logical, linear, and devoid of any paranoia or delusions. PageID 573. Similarly, in November 2009, Dr. Trevino again noted that Plaintiff reported experiencing no auditory hallucinations, and found his thought processes to be logical, linear, and devoid of any paranoia or delusions. PageID 573.

**B. The ALJ's Decision**

The ALJ found Plaintiff's bipolar disorder, obesity, and schizoaffective disorder to be "severe impairments" at step two of the five-step disability analysis. PageID 75. Plaintiff's sole assignment of error is that the ALJ erred by not giving controlling weight to the shared opinion

of Drs. Pasha and Trevino that Plaintiff is unable to work due to those impairments. The ALJ's reasoning for according less than controlling weight to both is well-explained in his decision and, in the Court's opinion, is well-supported by substantial evidence for the reasons that follow.

In deciding the level of weight to accord to the opinions of Plaintiff's treating sources, the ALJ considered their examining relationships; the frequency and duration of their treatment; and the supportability and consistency of their opinions when compared to the remainder of the record. PageID 79. The ALJ's opinion reflects that he paid particular attention to the consistency of the opinions of Drs. Pasha and Trevino as compared with the other evidence in the record, as well as the degree to which those opinions were supported by objective evidence and explanations in their treatment notes. *Id.*; s*ee also* 20 CFR §§ 404.1527, 416.927; SSR 96-2p, 1996 WL 374188.

Ultimately, the ALJ discounted the opinions of Drs. Pasha and Trevino, and found that their opinions as to the severity of Plaintiff's impairments were not entitled to controlling weight because neither opinion -- *i.e.*, that Plaintiff is totally disabled due to his mental impairments, and is therefore unable to work -- is supported by their treatment notes or objective evidence in the record. PageID 79. The ALJ found that neither Dr. Pasha nor Dr. Trevino had communicated any specific restrictions during their treatment, and their records showed that Plaintiff did rather well on medication. *See* PageID 433-34, 465-74, 573-78; *see also* PageID 420-21, 439-52. The ALJ relied on the Medical Expert's finding that, based upon her review of the record, Plaintiff's mental condition is reasonably stable as long as he is compliant with his medication and continues to abstain from substance abuse. PageID 79. In addition, the ALJ reasonably found that Dr. Pasha's treatment notes are brief; the notes often fail to document objective evidence other than his observations of an anxious effect; and the notes provide no

detailed information supporting the extreme limitations he suggested in the Mental Functional Capacity Form submitted to the county welfare department. PageID 420-21, 439-52. Similarly, the ALJ found Dr. Trevino's opinion, as to the severity of Plaintiff's impairments, to be unsupported by objective evidence in the record. *Id*.; *cf*. PageID 433-34, 465-74, 573-78. The Court agrees with this finding.

The Court also agrees with the ALJ's finding that the opinions of Drs. Pasha and Trevino -- regarding Plaintiff's mental stability and mental RFC -- are unsupported by the objective evidence of record. PageID 79. Dr. Pasha gave a GAF score of 55 when Plaintiff was first seen in 2006. PageID 457. In June 2006, Dr. Mary Ann Jones, Ph.D., a consultative psychologist, opined that Plaintiff had moderate impairment in work-related mental functions, and assigned him a GAF score of 51. PageID 358-62. The next month, a state agency reviewing psychologist, Frank Orosz, Ph.D., opined that Plaintiff had moderate limitations in his activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. PageID 365-67. Dr. Orosz also recognized a history of Plaintiff experiencing one or two extended episodes of decompensation, but concluded that Plaintiff could perform simple, routine tasks that did not involve production quotas or rigorous time constraints. *Id*. In April 2007, Dr. Orosz's assessment was confirmed by another state agency psychologist, Tonnie Hoyle, Psy.D. PageID 401. In 2008, Plaintiff's GAF score was 60-65[3] after in-patient treatment following an episode of decompensation. PageID 410. Moreover, in 2010, Jerry Flexman, Ph.D., a consultative psychologist, assigned a GAF score of 55. PageID 591. When medicated, the

---

[3]A GAF score of 61-70 indicates some mild symptoms like depressed mood or mild insomnia or some difficulty in social, occupational or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. *See* DSM-IV-TR 33-34.

record reflects Plaintiff's GAF score is generally in the range of 51-59 -- indicative of moderate limitations in functioning.

Moreover, Dr. Pasha's and Trevino's shared opinion -- that Plaintiff is unstable and unable to function while performing work activity -- is inconsistent with Plaintiff's completion of barber school during the period of alleged disability. Dr. Trevino and Dr. Pasha both reported that Plaintiff is markedly limited in his ability to maintain a routine, be regular with his attendance, get along with coworkers, maintain socially appropriate behavior, and maintain social functions. However, the ALJ reasonably found that Plaintiff's ability to attend and complete barber school to wholly contradict any notion that Plaintiff cannot not follow rules, keep a schedule, maintain attention and concentration, and interact with others. PageID 80. The ALJ's finding -- that Plaintiff's "psychiatric symptoms were sufficiently under control as to allow him to complete his training" -- is supported by substantial evidence. *Id.* In addition, although Plaintiff testified that the medicine was not much help, the treatment notes of both of Plaintiff's treating psychiatrists and the testimony of the Medical Expert show Plaintiff functions quite well when taking his medication. For instance, Dr. Trevino's most recent treatment notes in the record report no instances of auditory or visual hallucinations, *see* PageID 573-78, and are consistent with Dr. Trevino's observation that Plaintiff "continues to adjust quite well on his present level of medication." PageID 575. Plaintiff's increased stability and medication compliance further supports the ALJ's determination that he is not disabled. *See Houston v. Sec'y of H.H.S.,* 736 F.2d 365, 367 (6th Cir. 1984) (holding an impairment that is controlled with medication is not disabling).

In considering Plaintiff's daily activities, the ALJ determined that there was no evidence of adverse side effects from treatment or medications which would prevent him from working.

14

PageID 80. The ALJ found that Plaintiff's impairments do not significantly restrict his activities of daily living, which is confirmed by Plaintiff's testimony before the ALJ. PageID 123-24, 131-32, 136. Plaintiff lives alone, uses public transportation, and has a driver's license, but does not drive because he does not have a car. PageID 92.

The ALJ appropriately accommodated Plaintiff's impairments, including his obesity, in his RFC finding that Plaintiff is capable of "light" work, subject to the following restrictions: Plaintiff is limited to simple one or two step tasks; work that does not involve complex or detailed instructions; low-stress work; and limited interaction with supervisor and coworkers. *Id*. The ALJ reasonably found that limiting Plaintiff to simple, low-stress tasks with minimal personal contact with supervisors and coworkers adequately addressed the effects of his mental impairments. PageID 80.

The Court finds that the functional limitations resulting from Plaintiff's mental impairments are adequately addressed by the RFC accorded by the ALJ. The ALJ's determination -- not to give the opinions of Drs. Pasha and Trevino controlling or deferential weight -- is well-supported by substantial evidence, and his reasons for discrediting their opinions are adequately set forth in the decision. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1527(d)(2). In addition, Plaintiff's argument that the ALJ wrongly based his opinion on the testimony of the Medical Expert is without merit. The Medical Expert's testimony, the reports of the consultative examiners, and the Plaintiff's own testimony regarding his functional abilities all support the ALJ's ultimate finding of non-disability. The regulations provide that the more a medical source's opinion is supported by relevant evidence -- particularly medical signs and laboratory findings -- the more weight the ALJ shall give to that opinion. *See* 20 C.F.R. § 404.1527(d)(3). Thus, the Court finds that the

ALJ appropriately weighed the evidence of record, and applied the analysis required by the regulations in discounting the opinions of both of Plaintiff's psychiatrists.

In sum, which the Court might have viewed this case differently were it to have heard the evidence, the record supports the conclusion that the ALJ sufficiently acted within his "zone of choice" given the evidence before him. *See Felisky*, 35 F.3d at 1035. In such circumstances, the Court is required to affirm the ALJ's conclusion that Plaintiff is not disabled. *Buxton*, 246 F.3d at 772.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED**.

August 3, 2012                                     s/ **Michael J. Newman**
                                                   United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report & Recommendation objected to and shall be accompanied by a memorandum in support of the objections. If the Report & Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).